**Curtis A. BARKSDALE, Laura Harvey, Judith Kastanis, and Dorothy Potts, Plaintiffs,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.**

**No. C–C–84–439–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

Oct. 30, 1985.

Karen Zaman Mashburn, Charlotte, N.C., for plaintiffs.

George Hodges, Moore, Van Allen, Allen & Thigpen, Charlotte, N.C., for defendant.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Chief Judge.

THIS MATTER was heard by the undersigned on October 18, 1985 at Charlotte, North Carolina upon the Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Defendant was represented by George R. Hodges, Attorney at Law. The Plaintiffs were represented by Karen Z. Mashburn, Attorney at Law.

Fed.R.Civ.P. 56 states that the Court may grant summary judgment if there is not a genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The evidence presented to the Court, including any legitimate inference therefrom, is to be viewed in the light most favorable to the party opposing the motion. *Tyndall v. United States*, 295 F.Supp. 448, 451 (E.D.N.C. 1969). Having applied these standards to the depositions, affidavits, legal memoranda, and arguments of counsel, the Court is of the opinion that there does not exist a genuine issue of material fact as to any of the Plaintiffs' claims and the Defendant is entitled to judgment as a matter of law.

The Plaintiffs' first claim is based on fraud. To establish a *prima facie* case of fraud, the Plaintiffs must be able to prove that the following elements exist:

(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.

**1382**

*Ragsdale v. Kennedy,* 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974).

■ The Plaintiffs allege that the Defendant intentionally misrepresented to them the nature of their three-week assignment and intentionally concealed from them any possibility that they might suffer damage as a result of the tasks they were given to perform. The Plaintiffs were hired by an independent temporary employment agency to participate in a study the Defendants were conducting to determine the legibility of different video display terminals used by bank tellers. The Defendant has presented considerable evidence that the sole purpose of the study was to determine the best overall arrangement of terminal, viewing angle, and viewing distance.

In their Complaint, the Plaintiffs allege that the true nature of the Defendant's study was "an experiment in testing the levels of human tolerance." (Complaint ¶ 11.) They claim that the "false representation ... made was that Plaintiffs were there to test out machines, rather than to be tested themselves." (Complaint ¶ 13.) Considering the evidence in the light most favorable to the Plaintiffs, there is nothing competent in the record to substantiate these allegations. The Plaintiffs' counsel directed the Court's attention to the affidavit of Professor Nancy King at the hearing for support; Professor King merely states, however, that the Defendant's study could be considered a "human experiment" for the simple reason that humans participated in it. There is no hard evidence in Professor King's affidavit nor in any of the other documents submitted in opposition to the motion to support the Plaintiffs' contention that the study in which they participated was actually a test of human tolerance. Thus, there is no genuine issue as to any material fact concerning whether the purpose of the study was anything other than what the Defendant represented it to be.

The Plaintiffs also claim that the Defendant intentionally failed to inform them of any physical or emotional damage that might result from the job. The evidence shows that the Defendant was not aware at the time the Plaintiffs began their assignment that the tasks to be performed could cause any injury. A number of the Defendant's employees as well as two groups, each comprised of four temporary personnel, had performed the tasks prior to the Plaintiffs' arrival, and none of those prior participants had complained of any discomfort. Since the Defendant had no reason to know that such discomfort might occur during the Plaintiffs' segment of the study, it cannot be said to have made a "knowing concealment" with regard to any possibility of injury.

The Plaintiffs pointed out that Dr. Mark Ominsky, who devised the study for the Defendant, was aware that some hypotheses had been advanced concerning the possibility that stress or health hazards may be associated with the improper use of video display terminals. Dr. Ominsky stated in his deposition, however, that there was no hard evidence that showed there was any safety hazard related to the use of video display terminals. Thus, Dr. Ominsky's failure to inform the Plaintiffs of these hypotheses was not "reasonably calculated to deceive," but rather was the result of Dr. Ominsky's professional belief that there was no substantiated cause for concern.

Because there is no genuine issue as to any material fact concerning the Plaintiffs' inability to establish the first two elements of their fraud claim, there is no need to consider the evidence concerning the other elements.

■ The Plaintiffs' second cause of action is for intentional infliction of emotional distress. As stated by the North Carolina Supreme Court,

[t]his tort consists of: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another. The tort may also exist where the defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress.

*Dickens v. Puryear,* 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). The Court cannot discern any evidence that would support a finding that the Defendant's conduct was "extreme and outrageous," was intended to cause the Plaintiffs severe emotional distress, or indicated a reckless indifference to any likelihood that it might cause severe emotional distress.

The Plaintiffs' final claim is that the Defendant invaded their privacy by eliciting responses from them through its study that it otherwise would not have been able to obtain. North Carolina has long recognized a cause of action for invasion of an individual's right of privacy. *Renwick v. The News and Observer Publishing Co.,* 310 N.C. 312, 327, 312 S.E.2d 405, 415 (Meyer, J., concurring in part and dissenting in part) (citations omitted), *cert. denied,* —— U.S. ——, 105 S.Ct. 187, 83 L.Ed.2d 121 (1984). Nonetheless, the North Carolina courts thus far have found the tort to exist in only two factual situations which are quite distinct from the present situation: first, unauthorized use of a plaintiff's photograph in a newspaper advertisement, *Flake v. Greensboro News Co.,* 212 N.C. 780, 195 S.E. 55 (1938); and second, publication over a plaintiff's name of a picture of someone other than the plaintiff. *Barr v. Southern Bell Telephone & Telegraph Co.,* 13 N.C.App. 388, 185 S.E.2d 714 (1972).

The only conceivable branch of "invasion of privacy" in which the present facts might fall would be that of unreasonable intrusion upon the seclusion of another as delineated in Restatement (Second) of Torts § 652B. Section 652B provides:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

The Defendant's observation and recording of the number of errors the Plaintiffs made in the tasks they were instructed to perform can hardly be considered an intrusion upon the Plaintiffs' "solitude or seclusion ... or [their] private affairs or concerns." Since there is no evidence of such an intrusion, the Defendant is entitled to summary judgment on the Plaintiffs' claim for invasion of privacy.

## CONCLUSION

The Defendant's motion for summary judgment should be granted as there is no genuine issue of material fact as to any of Plaintiffs' claims against it.

The Clerk of Court is directed to enter judgment for the Defendant in accordance with this Memorandum of Decision pursuant to Rule 58 of the Federal Rules of Civil Procedure.